## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ALICIA RAEL,

     Plaintiff,

v.                                                                                  No. 1:24-cv-1139 KG/DLM

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Alicia Rael's Opening Brief in Support of a Social Security Appeal. (Doc. 14.) Having considered the record, submissions of counsel, and relevant law, the Court recommends the motion be granted in part and remanded for further proceedings.[1]

### I.    Procedural History

On September 22, 2022, Rael filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) under Title II of the Social Security Act (SSA). (Administrative Record (AR) at 202–08.[2]) Rael alleged a disability onset date of March 1, 2021. (*Id.* at 202.) Disability Determination Services (DDS) determined that Rael was not disabled initially and on reconsideration. (*Id.* at 77–99.) Rael requested a hearing with an Administrative Law Judge (ALJ) to challenge the decision regarding DIB. (*Id.* at 116.)

---

[1] Chief United States District Judge Kenneth J. Gonzales entered an Order of Reference Relating to Social Security Appeals referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 18.)

[2] Document 8 contains the sealed Administrative Record. (Doc. 8.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Both Rael and a vocational expert (VE) testified during the *de novo* hearing. (*See id.* at 45–76.) ALJ David Foley issued an unfavorable decision on June 27, 2024. (*Id.* at 10–22.) Rael submitted a request for review of the ALJ's decision, which the Council ultimately denied on September 9, 2024 (AR at 1–6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and of what she "can still do despite . . . her limitations." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national

economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Foley found that Rael "did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2021[,] through her date last insured of March 31, 2024." (AR at 13 (citing 20 C.F.R. §§ 404.1571–76).)

At Step Two, the ALJ concluded that Rael "had the following severe impairments: systemic lupus erythematosus, HLB 27 positive, osteoarthritis of the knee, femoral acetabular impingement, irritable bowel syndrome, and degenerative disease of the lumbar spine and sacroiliac joints." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) He also considered Rael's anxiety disorder and depressive disorder and found they were non-severe. (*Id.*)

At Step Three, the ALJ found that Rael "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

At Step Four, the ALJ considered the evidence of record and found that, through her date last insured, Rael "had the [RFC] to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except[ she] could occasionally climb ramps and stairs; . . . frequently balance and stoop; . . . occasionally kneel, crouch and crawl; . . . frequently handle, finger, and feel; and . . . should avoid concentrated exposure to sunlight or other bright lights." (*Id.* at 16.)

The ALJ found that Rael "was unable to perform any past relevant work." (*Id.* at 20 (citing 20 C.F.R. § 404.1565).) Based on his review of the record and the testimony of the VE, ALJ Foley found that, through her date last insured, Rael could have performed the representative occupations of document preparer, paramutual ticket checker, and surveillance system monitor. (*Id.* at 21.) The

ALJ ultimately determined that Rael "was not under a disability, as defined in the Social Security Act, at any time from March 1, 2021, the alleged onset date, through March 31, 2024, the date last insured." (*Id.* at 22 (citing 20 C.F.R. § 404.1520(g)).)

III.    **Legal Standard**

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084) (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably

4

have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.    Discussion

Rael argues that remand is warranted because the ALJ failed to: (1) consider her fibromyalgia; and (2) properly consider her mental limitations. (*See* Doc. 14 at 2, 9–14.) I recommend granting the motion on the basis that the ALJ failed to adequately consider Rael's fibromyalgia in assessing the RFC.

### A.    The ALJ did not consider Rael's fibromyalgia.

Rael argues that remand is warranted because ALJ Foley failed to consider her fibromyalgia diagnosis as a medically determinable impairment or to evaluate her fibromyalgia in accordance with SSR 12-2p. (*See id.* at 11.) Rael alleges disability, in relevant part, on the basis of fibromyalgia. (*See, e.g.*, AR at 263.) The Commissioner does not disagree that Rael was diagnosed with fibromyalgia in November 2021. (*See* Doc. 16 at 4 ("Fields diagnosed . . . fibromyalgia based on a presentation, muscle weakness, and easy fatiguability") (citing AR at 500).) In fact, the record reveals at least four providers discussed fibromyalgia-related symptoms, prescribed medications to treat fibromyalgia, and/or mentioned a possible fibromyalgia diagnosis between May 2020 and November 2022.

On May 6, 2020, Karen Wesslowski, PA-C assessed Rael with and treated her for possible fibromyalgia. (*See* AR at 396–97.) Wesslowski noted that Rael was doing well on Cymbalta (duloxetine 30mg), a medication used to treat fibromyalgia.[3] (*See id.* at 397.) On July 8, 2021, Sharon Nunez, M.D. noted Rael had multiple trigger points tenderness with presentation suggestive of fibromyalgia and recommended increasing Rael's duloxetine dosage to 60mg. (*See*

---

[3] *See* Duloxetine, https://www.drugs.com/duloxetine.html (last visited July 20, 2025).

*id.* at 504.)

On November 22, 2021, Roderick Fields, M.D. assessed Rael with fibromyalgia, noting that on physical examination, Rael had multiple trigger points tenderness suggestive of fibromyalgia. (*Id.* at 500.) Fields also recommended increasing her duloxetine dosage to 60 mg. (*Id.*) Fields noted that Rael complained of proximal muscle weakness and easy fatiguability in her arms, legs, hips, and eye lids that may be related to fibromyalgia. (*See id.*) He concluded that "[f]ibromyalgia seems to be driving a major component of [Rael's] symptomatology, however underlying inflammatory causes need to be addressed." (*Id.* at 501.) A year later, Fields recorded that Rael has a history of fibromyalgia, "[s]till with diffuse pain[] and some sleep interruption without joint swelling." (*Id.* at 590–91.)

On November 3, 2022, Linda Smoker, M.D. assessed Rael with arthralgia (joint pain) and myofascial pain and conjectured that they were consistent with or related to fibromyalgia. (*See id.* at 486.) She prescribed pregabalin, a medication "used to treat pain caused by fibromyalgia,"[4] and advised Rael to continue duloxetine. (*See id.*) Smoker later reviewed Rael's x-ray and urine culture results and concluded "that the most likely diagnosis is fibromyalgia." (*Id.* at 467.)

Although the ALJ referenced findings, symptoms, or medications discussed in three of these records (*see id.* at 18 (citing AR at 504), *id.* at 19 (citing AR at 500, 591)), he never once mentioned fibromyalgia in the decision. The Commissioner acknowledges this shortcoming but asks the Court to apply the harmless error doctrine. (*See* Doc. 16 at 7–8.) The Commissioner contends that "the ALJ reasonably considered all of the objective medical and other evidence, including limitations associated with [Rael's] fibromyalgia . . . , and the decision is supported by substantial evidence." (*Id.* at 8 (citation omitted).)

---

[4] *See* Pregabalin, https://www.drugs.com/pregabalin.html (last visited July 20, 2025).

The Tenth Circuit cautions courts against liberally applying the harmless error doctrine, both to "avoid usurping the Commissioner's responsibility to find the facts of a case" and, "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ," to prevent "'violating the general rule against post hoc justification of administrative action . . . .'" *See J.M.V. v. Berryhill*, No. 18-1202-JWB, 2019 WL 2393165, at *4 (D. Kan. June 6, 2019) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Both factors are implicated in this case, as the ALJ neither considered the fact of Rael's fibromyalgia diagnosis nor applied the correct legal standards by evaluating her fibromyalgia under SSR 12-2p. *See id.*

Rael argues that the matter must be remanded because the ALJ failed to determine whether fibromyalgia was a medically determinable impairment (MDI). (Docs. 14 at 11; 17 at 2 (citing *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006)).) Rael's position is supported by the decision in *Salazar*, where the ALJ wholly failed to consider the claimant's mental impairment. *See Salazar*, 468 F.3d at 621. This constituted reversible error, the Tenth Circuit opined, because "[i]t is beyond dispute that an ALJ is required to consider all of the claimant's [MDIs], singly and in combination; the statute and regulations require nothing less." *Id.* (citations omitted).

The Commissioner argues, though, that "the ALJ reasonably considered any alleged symptoms and limitations that could be associated with autoimmune disorders, including fibromyalgia." (Doc. 16 at 11 (citing AR at 16–20; 20 C.F.R. § 404.1529(a), (c)(3)).) The Commissioner made an almost identical argument in *J.M.V.*, where the ALJ also failed to mention fibromyalgia in the decision. *See J.M.V.*, 2019 WL 2393165, at *4 (noting that "[t]he Commissioner argues the failure to consider fibromyalgia was nevertheless harmless because the ALJ 'considered all of the functional limitations in the record, regardless of the condition that was the source of those limitations'") (citation omitted). As in that case, however, it is less than clear

7

here whether ALJ Foley considered the full picture of Rael's fibromyalgia diagnosis, the severity of her fibromyalgia-specific symptoms, and their limiting effects. *See id.* Although the Commissioner draws parallels between fibromyalgia and the other autoimmune disorders the ALJ discussed in the decision (i.e., lupus and HLA B27), the Commissioner cites no authority to show that that the symptoms or their resulting limitations are identical in scope and effect. (*See* Doc. 16 at 11–12.) On the contrary, "according to SSR 12-2p, '[w]hen a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence <u>and severity of the impairment.</u>'" *See J.M.V.*, 2019 WL 2393165, at *4 (quoting SSR 12-2p, 2012 WL 3104869, at *3 (July 25, 2012)). Further, SSR 12-2p advises that "the symptoms of [fibromyalgia] can 'wax and wane' so that a person may have 'bad days and good days[,]' and can cause widespread pain or fatigue that necessitates nonexertional or mental limitations." *Id.* (quoting SSR 12-2p, 2012 WL 3104869, at *6). Rael's testimony and the record evidence reveal that she experienced frequent pain, fatigue, brain fog, and headaches, and that her symptoms interfere with sleep, standing and walking, and daily activities. (*See, e.g.*, AR at 57–59, 304–05, 309, 395–96, 400, 498–500, 519.) Had the ALJ evaluated Rael's symptoms and limitations under the standard outlined in SSR 12-2p, his conclusions about the severity of her impairments and the resulting limitations may have changed. *See J.M.V.*, 2019 WL 2393165, at *4 (citing *Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) ("noting that a lack of objective test findings is not determinative of the severity of fibromyalgia; remanding for ALJ to address claimant's fibromyalgia because it might impact the weight assigned to medical opinions")).

For these reasons, I recommend the Court grant Rael's motion to remand in order for the ALJ to determine whether her fibromyalgia is medically determinable and evaluate it under SSR

12-2p. If the ALJ finds fibromyalgia is an MDI, "it could impact the ALJ's assessment of [Rael's] limitations." *See id.* at *5 (citing *Mushero v. Astrue*, 384 F. App'x 693, 695 (10th Cir. 2010)).

Because remand is required for further findings regarding Rael's fibromyalgia diagnosis, I do not address Rael's argument that the ALJ failed to properly consider her mental limitations. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court need not reach issues raised that "may be affected by the ALJ's treatment of th[e] case on remand").

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** Rael's Opening Brief in Support of a Social Security Appeal (Doc. 14) and **REMAND** this matter for further proceedings.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE